**Opinion issued December 5, 2019**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-18-00470-CV

—————————————

**ALEXANDER HOUSE, LTD., Appellant**

**V.**

**ARBOR COMMERCIAL MORTGAGE, LLC and
ARBOR COMMERCIAL FUNDING, LLC, Appellees**

---

**On Appeal from the 113th District Court
Harris County, Texas
Trial Court Case No. 2015-68985**

---

## MEMORANDUM OPINION

Appellant Alexander House, Ltd. sued Appellees Arbor Commercial Funding, LLC (Arbor Funding) and Arbor Commercial Mortgage, LLC (Arbor Mortgage) for breaches of contract and fiduciary duty and other claims after their loan commitment to refinance the debt on Alexander House's apartment complex

fell through. Alexander House decided not to go forward with the loan just before closing when the final loan documents included what Alexander House considered to be cost-prohibitive, recourse requirements to the otherwise non-recourse loan.

After a bench trial, the trial court entered a take-nothing judgment against Alexander House on its claims against Arbor Funding and Arbor Mortgage. Alexander House appeals, asserting in three issues that the trial court erred in (1) enforcing a jury waiver and (2) concluding there was no fiduciary duty and (3) that the evidence is legally and factually insufficient to support the trial court's adverse fact findings. We affirm.

## Background

Alexander House is the owner and operator of a large Houston apartment complex. It had owned the apartment complex since 1993, and in November 2005, it mortgaged the complex with a ten-year conduit loan. That loan's terms gave Alexander House a two-month window before the loan matured—between September 11, 2015 and November 1, 2015—to refinance its mortgage without having to pay a penalty. With the knowledge that the loan process can take several months, Alexander House began searching for refinancing in early 2015 with the assistance of its mortgage broker, Jim Adams of Berkadia Commercial Mortgage, LLC.

By late March 2015, Alexander House had received quotes from several lenders, including MC-Five Mile Commercial Mortgage Finance, LLC. Alexander House ultimately decided to pursue a refinance loan from the Federal Home Loan Mortgage Corporation (known as "Freddie Mac"), which prompted Adams to contact Arbor Funding in May 2015 because it was an approved seller and servicer of Freddie Mac loans. Alexander House and Arbor Funding then began discussions regarding refinancing with a Freddie Mac Small Balance Loan (SBL) in the principal amount of $4 million.

Alexander House executed a Small Balance Loan Letter of Interest with Arbor Funding (the letter of interest agreement) dated May 22, 2015 and paid Arbor Funding a $12,500 application fee. On August 31, 2015, Alexander House executed a loan commitment agreement (the loan commitment agreement) with Arbor Mortgage. The loan commitment agreement provided that Arbor Mortgage would, subject to certain conditions, fund a loan to Alexander House on specified terms and then sell that loan to Freddie Mac. It was expressly understood that Freddie Mac's loan documents were non-negotiable. Alexander House paid Arbor Mortgage a $40,000 good-faith deposit and an application fee of $4,000. The loan was scheduled to close on September 11, 2015.

Freddie Mac's final loan documents included repair riders that Alexander House considered to be cost-prohibitive, recourse obligations to an otherwise non-

recourse loan. After Arbor Mortgage was either unable or unwilling to get Freddie Mac to revise the repair riders, Alexander House notified Arbor Mortgage that it would not close on the loan. It then sought and obtained refinancing with MC-Five Mile and incurred additional expenses and interest.

The crux of Alexander House's claims against Arbor Funding and Arbor Mortgage are that they agreed but failed to timely furnish all the Freddie Mac loan documents—specifically the repair riders—to Alexander House and that, if they had timely done so, Alexander House would not have pursued the Freddie Mac SBL loan.

Alexander House originally sued Arbor Mortgage on November 18, 2015, asserting claims for breach of contract and for fraud arising out of the letter of interest agreement and the loan commitment agreement. Arbor Mortgage asserted a counterclaim for indemnity based on Alexander House's failure to perform under the loan commitment. In its first amended petition, Alexander House added a claim against Arbor Mortgage for negligent misrepresentation. Alexander House also filed a jury demand. In its second amended petition, Alexander House added claims for negligence and breach of fiduciary duty against Arbor Mortgage and deleted its fraud claim.

Arbor Mortgage filed a motion to strike Alexander House's jury demand, asserting that the loan commitment contained a valid jury waiver. After Alexander

House responded in opposition and a hearing was held, the trial court granted the motion. Alexander House then filed a third amended petition that added Arbor Funding as a defendant and asserted claims arising out of its letter of interest agreement with Arbor Funding.

After a bench trial, the trial court entered a take-nothing judgment against Alexander House and a take-nothing judgment against Arbor Mortgage on its counterclaim. The trial court also made and filed findings of fact and conclusions of law. Specific to this appeal, the trial court found that Alexander House did not prove its breach of contract claim and concluded that Arbor Funding did not owe Alexander House a fiduciary duty.

**Jury Waiver**

In its first issue, Alexander House asserts that the trial court erred in striking its jury demand because the jury waiver is limited to claims arising from the loan commitment with Arbor Mortgage and that it should have had a jury trial on its claims arising from its earlier letter of interest agreement with Arbor Funding. It also argues that it was entitled to a jury trial on its claims against Arbor Funding.

The loan commitment agreement between Alexander House and Arbor *Mortgage* contains a New York choice-of-law provision and the following jury-waiver provision:

5

**42. WAIVER OF TRIAL BY JURY. BORROWER AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS CONDITIONAL COMMITMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS LENDER AND BORROWER THAT IS TRIABLE OF RIGHT BY A JURY AND WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN BY BORROWER KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.[1]**

The loan commitment defines "Lender" as "Arbor Commercial Mortgage, LLC, a New York limited liability company (together with its successors and assigns)" and "Borrower" as "Alexander House, Ltd." Alexander House's letter of interest agreement with Arbor Funding does not have a jury-waiver provision.

The trial court struck Alexander House's jury demand on the motion of Arbor Mortgage before Alexander House added Arbor Funding as a defendant. After adding Arbor Funding as a defendant, Alexander House did not request a jury trial on its claims against Arbor Funding. By failing to request a jury trial on its claims against Arbor Funding, Alexander House has not preserved its complaint for appellate review as to Arbor Funding. *See* TEX. R. APP. P. 33.1(a); *see also* TEX. R. CIV. P. 216(a) (providing that "[n]o jury trial shall be had in any civil suit, unless a written request for a jury trial is filed").

---

[1] Alexander House does not contest the validity of the jury waiver under either New York or Texas law.

6

Regarding the scope of the contractual jury waiver in the loan commitment with Arbor Mortgage, Alexander House argues that its claims against Arbor Mortgage arising out of the letter of interest agreement with Arbor Funding are outside the waiver's scope, which it contends is limited to claims arising from the loan commitment with Arbor Mortgage. We disagree.

The scope of the waiver is "ANY ISSUE ARISING OUT OF THIS CONDITIONAL COMMITMENT *OR* THE RELATIONSHIP BETWEEN THE PARTIES AS LENDER AND BORROWER." [Emphasis added.]. At the time of Arbor Mortgage's motion to strike Alexander House's jury demand, Alexander House's live petition was its Second Amended Petition, which alleged four claims against Arbor Mortgage: negligence, breach of fiduciary duty, negligent misrepresentation, and breach of contract.

For its negligence claim, Alexander House asserted that "Arbor breached its duty [of care] by failing to obtain and provide the Repair Riders until after execution of the Arbor Commitment and by failing to understand and advise Alexander House regarding the substance of the unusual requirements stated in those riders." For its claim for breach of fiduciary duty, Alexander House alleged the same duty and breach.

Alexander House's negligent misrepresentation claim was that "Arbor misrepresented the loan documents" "by omitting the Repair Riders from the set of

required loan documents and by submitting a list of required repairs that did not include any repairs to the circuit breakers, piping or wiring on the property—much less the potential cost-prohibitive repairs that could be required under the Repair Riders."

The breach-of-contract claim alleged that "Arbor breached [the letter of interest agreement] by failing to provide all of the material loan documents until after the execution of the loan commitment" with Arbor Mortgage.

All of these claims arise from either the loan commitment or the lender-borrower relationship, even if the inception of that relationship was the letter of interest agreement with Arbor Funding. *See, e.g., In re Credit Suisse First Boston Mortg. Capital, L.L.C.*, 257 S.W.3d 486, 490–91 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). Accordingly, the trial court did not err in enforcing the contractual jury waiver on Alexander House's claims against Arbor Mortgage.

We overrule issue one.

### Fiduciary Duty

We turn to Alexander House's third issue. Alexander House alleged that Arbor Funding breached its fiduciary duty of full disclosure by failing to disclose the repair riders for nearly three months and only until just before the closing. In its conclusions of law, the trial court determined that "Arbor did not owe a fiduciary duty to Alexander House" and that the " 'no-shopping' provision in the parties'

agreement did not establish a fiduciary relationship." Alexander House contends that the trial court erred in concluding that Arbor Funding was not Alexander House's fiduciary and thus did not owe it a fiduciary duty.

Whether a fiduciary duty exists is a question of law. *Dernick Res., Inc. v. Wilstein*, 312 S.W.3d 864, 877 (Tex. App.—Houston [1st Dist.] 2009, no pet.). On appeal from a bench trial, a trial court's conclusions of law are reviewed de novo, giving no deference to the trial court's resolution of a legal question. *Harris Cty. Appraisal Dist. v. Wilkinson*, 317 S.W.3d 763, 766 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

Alexander House asserts that Arbor Funding was its fiduciary because its letter of interest agreement with Arbor Funding created an agency relationship, with Arbor Funding becoming Alexander House's exclusive agent to procure a loan from Freddie Mac for Alexander House. The agreement's exclusivity provision provides in pertinent part:

> **EXCLUSIVITY:** Borrower [Alexander House] hereby acknowledges that from the date hereof the Lender [Arbor Funding] is the only Freddie Mac Lender authorized to represent the Borrower and act on behalf of the Borrower with Freddie Mac in connection with the proposed financing of the Property as set forth herein (the "Proposed Financing"). Borrower hereby represents, warrants and covenants that for a period of ninety (90) days from (i) the date the borrower notifies the Lender in writing of Borrower's termination of this Application or (ii) the date the Lender notifies the Borrower in writing of Lender's termination of the Application, the Borrower shall be prohibited from seeking Freddie Mac financing from any other Freddie Mac Lender.

9

In *Northern Shipping Funds I, LLC v. Icon Capital Corp.*, the federal court

summarized New York law on fiduciary relationships as follows:

> Under New York law, "[a] fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Krys v. Butt*, 486 Fed. Appx. 153, 154 (2d Cir. 2012) (alteration in original) (quoting *EBC I, Inc. v. Goldman Sachs and Co.*, 5 N.Y.3d 11, 19, 799 N.Y.S.2d 170, 175, 832 N.E.2d 26 (2005)). Moreover,
>
>> [s]uch a relationship, necessarily fact-specific, is grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions. Generally, where parties have entered into a contract, courts look to that agreement to discover the nexus of the parties' relationship and the particular contractual expression establishing the parties' interdependency. If the parties do not create their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them.
>
> *Id.* (quoting *EBC I, Inc.*, 5 N.Y.3d at 19–20, 799 N.Y.S.2d at 175, 832 N.E.2d 26). " 'At the heart of the fiduciary relationship lies reliance, and de facto control and dominance.' " *Id.* (quoting *United States v. Chestman*, 947 F.2d 551, 568 (2d Cir. 1991)). "[W]hen parties deal at arm[']s length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." *Boccardi Capital Systems, Inc. v. D.E. Shaw Laminar Portfolios, LLC*, 355 Fed. Appx. 516, 519 (2d Cir. 2009) (second alteration in original) (internal quotation marks omitted); *see also Intellivision v. Microsoft Corp.*, 784 F.Supp.2d 356, 372 (S.D.N.Y. 2011) ("Generally, commercial transactions do not create fiduciary obligations, absent express language in the contract or prolonged prior course of dealings between the parties establishing the fiduciary relationship." (internal quotation marks omitted)).

921 F. Supp. 2d 94, 101–02 (S.D.N.Y. 2013); *see also Wiener v. Lazard Freres & Co.*, 241 A.D.2d 114, 122, 672 N.Y.S.2d 8, 14 (1998) ("As a general matter, an arms-length lender-borrower or creditor-debtor contractual relationship may not give rise to a fiduciary obligation on the part of the lender or creditor.").

New York law provides that an agency relationship can give rise to fiduciary duties between the parties. *See Maurillo v. Park Slope U-Haul*, 194 A.D.2d 142, 146 (N.Y. App. Div. 1993) (recognizing that agency is fiduciary relationship between principal and agent); *Vill. On Canon v. Bankers Tr. Co.*, 920 F. Supp. 520, 532 (S.D.NY. 1996) ("It is true that an exclusive agency gives rise to a fiduciary duty between principal and agent under New York law."). Under New York law, "[a]n agency is a fiduciary relationship which results from a manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act. It is a relationship whereby one retains a degree of direction and control over another." *Meese v. Miller*, 79 A.D.2d 237, 241, 436 N.Y.S.2d 496, 499 (1981) (internal citations and quotations omitted). But, "[w]hen an agency relationship is purported to be established by contract, 'a court will look to the language of the agreement to ascertain the relationship created between the parties.' " *Northern Shipping Funds*, 921 F. Supp. 2d at 103 (quoting *Steinbeck v. Steinbeck Heritage Found.*, 400 Fed. Appx. 572, 575 (2d Cir. 2010)).

11

Additionally,

> labels are not dispositive, rather the facts and circumstances of the parties' relationship determines whether an agent-principal relationship existed. *Onebeacon Insurance Co. v. Forman International, Ltd.*, No. 04 Civ. 2271, 2005 WL 100849, at \*3 (S.D.N.Y. Jan. 19, 2005) (collecting cases). "[O]ne does not become an agent through the mere utterance of that term. Rather, a party claiming an agency relationship—to which a fiduciary duty might apply—must demonstrate that the alleged fiduciary 'occup[ied] a position of trust or special confidence with regard to [the plaintiff] that imposed obligations beyond the express agreements.' " *TD Waterhouse Investor Services, Inc. v. Integrated Fund Services, Inc.,* No. 01 Civ. 8986, 2003 WL 42013, at \*14 (S.D.N.Y. Jan. 6, 2003) (alterations in original) (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,* 98 F.3d 13, 20 (2d Cir. 1996)).

*Id.*

The parties do not dispute that at least one purpose for the exclusivity provision was to serve as a "no-shopping" provision to prevent Alexander House from contacting one of Arbor Funding's competitors and seeking a similar Freddie Mac loan while Arbor Funding was working on Alexander House's loan application. *See Qantum Commc'ns Corp. v. Star Broad., Inc*., 473 F. Supp. 2d 1249, 1258 (S.D. Fla. 2007) (stating that no-shopping provision is contractual provision that "precludes [the seller] from soliciting, entertaining, or negotiating with entities other than [the buyer] regarding the [purchase assets] while the Agreement is in effect."). Adams, who was Alexander House's broker, agreed that the exclusivity provision was "a protection to the lender [Arbor]." Furthermore, nothing in the letter of interest agreement suggests that Alexander House had

control over Arbor Funding. *See Northern Shipping Funds*, 921 F. Supp. 2d at 104 (citing *In re Parmalat Sec. Litig.*, 594 F. Supp. 2d 444, 451 (S.D.N.Y. 2009) ("When the existence of an agency relationship is uncertain, the courts often look to control as a critical indicator.")).

Before the letter of interest agreement with Arbor Funding, Alexander House already had a loan broker—Jim Adams of Berkadia Commercial Mortgage, LLC. Joseph Pryzant, Alexander House's principal, described Adams as "my representative" and his "loan broker" and confirmed that only Adams had direct communications with Arbor Funding. Pryzant never spoke with or dealt directly with Jay Porterfield, Arbor Funding's loan originator, or anyone else at Arbor.

Pryzant testified that Adams provided the following services to Alexander House as its loan broker: find a new loan; assist with loan negotiations; and assist in reviewing documents for Alexander House. It was Adams who approached Arbor Funding about obtaining a Freddie Mac SBL loan and acting on Alexander House's behalf in seeking the Freddie Mac SBL Program loan from Arbor. Additionally, Alexander House and Arbor each had their own legal counsel for the transaction. Finally, Alexander House presented no evidence that it had control over Arbor Funding as an alleged agent. *See id.*

We therefore conclude that, under New York law, the relationship in the letter of interest agreement between Alexander House and Arbor Funding was not

13

an agency relationship that created a fiduciary relationship.[2] The trial court did not err in concluding that the exclusivity provision did not create a fiduciary relationship between Alexander House and Arbor Funding

We overrule issue three.

## Sufficiency of the Evidence

In issue two, Alexander House asserts that the trial court's findings on its breach of contract claim are erroneous under legal and factual sufficiency grounds. Alexander House argues that the evidence conclusively shows that it and Arbor Funding entered into a binding agreement that Alexander House performed but that Arbor Funding did not perform because it failed to timely provide Alexander House with all material loan documents, resulting in damages to Alexander House. Specifically, it contends that Arbor Funding failed to timely provide—only after the loan commitment agreement was made and only until just before closing— three repair riders that were material to the refinance loan because they added cost-

---

[2] Alexander House alleged the same duty, breach, and damages for its breach-of-contract claim and for its breach-of-fiduciary duty claim. Even if there were a fiduciary relationship with Arbor Funding, it would be unavailing to Alexander House under New York law because "a cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand." *Northern Shipping Funds*, 921 F. Supp. 2d at 105 (quoting *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 196 (S.D.N.Y. 2011)). "Breach of fiduciary duty and breach of contract claims are duplicative where they 'are premised upon the same facts and seek the same damages for the alleged conduct.' " *Kriss v. Bayrock Grp. LLC*, No. 10cv3959, 2017 WL 1901966, at *4 (S.D.N.Y. May 8, 2017) (quoting *William Kaufman Org., Ltd. v. Graham & James LLP*, 703 N.Y.S.2d 439, 442 (1st Dep't 2000)).

prohibitive, recourse requirements to an otherwise non-recourse loan. This alleged breach resulted in Alexander House's damages in the form of deposits, fees, and expenses associated with pursuing the Freddie Mac loan, as well as added interest and other costs associated with its existing loan and with obtaining a different refinance loan. Alternatively, Alexander House argues that the trial court's findings on its breach-of-contract claim are against the great weight of the evidence.

The trial court made the following finding relevant to Alexander House's claim for breach of contract: "Losses or damages suffered by Alexander House, if any, were not proximately caused by any breach on the part of Arbor."

When a trial court makes express findings on at least one element of a claim, but omits other elements, implied findings on the omitted elements are deemed to have been made in support of the trial court's judgment. *See* TEX. R. CIV. 299; *In re Marriage of Elabd*, — S.W.3d —, —, 2019 WL 4200422, at \*2 (Tex. App.—Waco Sept. 4, 2019, no pet. h.); *Howe v. Howe*, 551 S.W.3d 236, 245 (Tex. App.—El Paso 2018, no pet.). On appeal, the trial court's findings are subject to the same legal and factual sufficiency review that would be applied in reviewing a jury's answer. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex. 1994).

In a legal-sufficiency review, the appellate court should credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). When a party raises a legal-sufficiency challenge to an adverse finding on which it had the burden of proof at trial, it must demonstrate "that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex. 2001).

When that same finding is challenged for factual insufficiency, the party raising the challenge must demonstrate that the adverse finding is "against the great weight and preponderance of the evidence." *Id.* at 242. In assessing the factual sufficiency challenge, the appellate court must consider and weigh all the evidence and should set aside the challenged finding if the evidence is so weak, or if the finding is so against the great weight and preponderance of the evidence, that the finding is clearly wrong and unjust. *Id.*

Alexander House summarizes its breach-of-contract claim in its reply brief as follows:

> [T]he basis of Appellant's breach of contract claim is that Arbor Funding agreed to provide advance copies of all material Freddie Mac **form** documents—i.e., sample documents with blanks—that could **potentially** be included as part of the final loan agreement. In other words, because Freddie Mac's form documents are non-negotiable, Appellant wanted to know what terms the loan **could** contain before proceeding with the transaction, so Arbor Funding agreed to provide Appellant with advance copies of all material Freddie Mac form

documents that **<u>might</u>** be used for the contemplated loan. [Emphases in original.].

Or as Alexander House stated succinctly in its opening brief, "Because Freddie Mac loan documents are non-negotiable, the parties agreed that Arbor Funding would provide Appellant with all of the loan documents before Appellant committed to a Freddie Mac loan." The threshold matter, therefore, is whether there was an agreement that Arbor Funding would provide Alexander House with all sample Freddie Mac loan documents, including all potential riders.

A plaintiff must prove four elements to recover for breach of contract: (1) the existence of a valid contract; (2) plaintiff performed or tendered performance; (3) defendant breached the contract; and (4) plaintiff sustained damages as a result of defendant's breach. *Davis v. Tex. Farm Bureau Ins.,* 470 S.W.3d 97, 104 (Tex. App.—Houston [1st Dist.] 2015, no pet.). To form a binding contract, there must be mutual assent—a "meeting of the minds"—on the essential terms of the contract. *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008); *Davis*, 470 S.W.3d at 104. The material terms of a contract must be agreed upon by the parties before a court can enforce the contract. *Williams v. Unifund CCR Partners*, 264 S.W.3d 231, 236 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Whether the parties had a meeting of the minds is based on the objective standard of what the parties said and did, not on their subjective state of mind.

*DeClaire v. G & B Mcintosh Fam. Ltd. P'ship*, 260 S.W.3d 34, 44 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

We begin our analysis by noting Alexander House's concession in its opening brief that the alleged agreement to provide all material Freddie Mac loan document samples is not part of the letter of interest agreement; it candidly states that "this promise was not specifically included in the written document." But as Arbor Funding points out, the letter of interest agreement contains the following provision that disclaims the existence of the alleged agreement to provide all material Freddie Mac loan document samples:

> The foregoing terms shall not be construed as an agreement to make the Borrower a loan pursuant to the above referenced terms. Further, no oral agreements or promises have been entered into or provided with respect to the Letter of Interest. This Letter of Interest shall not be modified except by an instrument in writing counter-signed by Lender and Borrower.

Accordingly, to the extent the trial court made an implied adverse finding that there was no alleged agreement to provide all material Freddie Mac loan document samples, Alexander House did not establish the alleged agreement's existence as a matter of law.

Alexander House points to the following evidence to support the existence of the alleged agreement: (1) a June 2, 2015, email with attachments from Porterfield to Adams with the subject "Freddie SBL loan docs," but with no email text; (2) on that same date, Adams forwarded that email with the attachments to

18

Pryzant and Alexander House's transactional attorney, with email text stating, "Sample loan docs"; (3) a June 23, 2015, email from Arbor's transactional attorney to Alexander House's transactional attorney, with email text stating, "[W]e are transmitting for your review correspondence and Freddie Mac form loan documents, including but not limited to certain form riders that may or may not be incorporated into the final loan documents."; (4) the correspondence (dated June 19, 2015) referenced in the June 23 email from Arbor's transactional attorney to Alexander House's transactional attorney, similarly stating, "We are transmitting to you a sample set of loan documents, including but not limited to certain form riders that may be incorporated into the final loan documents."; and (5) Pryzant's trial testimony that Porterfield had told Adams that, while the loan documents could not be changed, Arbor would provide them to Alexander House.

In addition to the above disclaimer language in the letter of interest, Arbor points to the following contradictory evidence: (1) the following sentence from Arbor's transactional attorney's June 23, 2015 email to Alexander House's transactional attorney: "All required riders will be provided for in the Commitment," and (2) the following full paragraphs from the June 19, 2015, correspondence from Arbor's transactional attorney to Alexander House's transactional attorney pertaining to the loan documents:

We are transmitting to you a sample set of loan documents, including but not limited to certain form riders that may be incorporated into the final loan documents. The sample set of loan documents are standard Freddie Mac forms for the SBL program, and may be updated and/or modified from time to time, including at any time by Freddie Mac prior to the closing of the Loan. Further, modifications to the loan documents may be required by virtue of Arbor's review of matters in connection with underwriting the Loan, including but not limited to third party reports.

A copy of the final loan documents will be provided to you at least one (1) business day prior to the closing of the Loan, although Arbor will endeavor to provide them a few days before the closing.[3] The final loan documents will be sent directly to the title/escrow company responsible for closing the Loan, where Borrower will need to sign all loan documents unless alternative arrangements have been made. The final loan documents will incorporate all deal specific points set forth in Arbor's loan commitment, and may also incorporate additional terms of the Loan based upon Lender's review or Lender's counsel's review of the third party reports and any other matters which are a condition of the Loan.

Upon considering all the evidence, we conclude that the trial court's implied adverse finding that there was not an alleged agreement to provide all material Freddie Mac loan document samples, including all potential riders, is not against the great weight and preponderance of the evidence.

We overrule issue two.

---

[3]    The one-day period was changed by agreement to five days.

## Conclusion

Having overruled Alexander House's three issues, we affirm the judgment of the trial court.

Richard Hightower
Justice

Panel consists of Justices Kelly, Hightower, and Countiss.